526 So.2d 931 (1988)
Carl RANDOLPH, Appellant,
v.
STATE of Florida, Appellee.
No. BS-293.
District Court of Appeal of Florida, First District.
May 11, 1988.
Rehearing Denied July 6, 1988.
Michael E. Allen, Public Defender, and David A. Davis, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Edward C. Hill, Jr., Tallahassee, for appellee.
WIGGINTON, Judge.
This appeal is from a judgment and sentence after a jury trial finding appellant, Carl Randolph, guilty of arson and burglary of a dwelling. The sole issue is whether the court erred in refusing to instruct the jury that voluntary intoxication was a defense to burglary. We reverse.
Appellant is described as a six foot three inch, 210-pound, 36-year-old black male. He lived with his girlfriend, Fay Allen, and her three children in Fay's Fort Walton Beach apartment for six or seven months. The parties became disenchanted and on a Thursday decided to split up. Fay took appellant's apartment key and told him to remove his belongings the next day after he left work. That following day, the Fort Walton Beach police arrested appellant for arson and burglary of Fay's dwelling.
Keeping in mind appellant's sole defense of voluntary intoxication, the record reflects that during opening statements at trial, defense counsel did not mention the defense of voluntary intoxication. She merely stated that she thought the evidence would show a different version of the facts from that which the State had suggested. There was no elaboration.
To better envision the extent of appellant's drinking that day, which relates to his defense, we must briefly examine the testimony at trial and the sequence of events leading up to appellant's transgressions.
Fay testified that Friday was appellant's usual day to get drunk. Although she had *932 given him permission to remove his belongings that Friday afternoon while she was at work, upon returning home she realized that he had not picked up all of his things. Nonetheless, Fay locked the doors before leaving to go to the Elks Club that night and did not give appellant permission to enter her house at a later time. Upon appellant's arrival at the Elks Club, Fay found him to be drunk and when she refused to leave with him, he threatened to beat her up.
Witness Ernest Skanes testified that he was sitting with a group of men near Fay's apartment when, after noticing what appeared to be a fire in the apartment, he saw appellant leave through the front door, get into his car, and drive away. He noted that from the way the car swerved, he thought that the driver was intoxicated. Ernest and his friends assisted in putting out the fire that was burning in the kitchen and then returned to their positions outside the apartment. Later on, appellant returned in his car, entered the apartment and started a fire on the front living room curtains. As the group rushed over again to subdue the flames, appellant came out of the apartment and said, "I did it. Don't nobody mess with it." Skanes thought appellant was intoxicated from the way he talked and walked.
Police officer Spinella, the first official at the location, told the jury that he could smell alcohol on appellant's breath and he appeared to be legally intoxicated as he slurred his speech but was not so out of control that he could not walk or talk. He further added that appellant was coherent, that is, he appeared to understand questions and his answers made sense. Officer Wyatt was the second police officer on the scene and testified that upon reading the Miranda warning to appellant, he answered coherently. Nevertheless, officer Wyatt did not attempt to fingerprint appellant because he was heavily intoxicated and highly agitated.
Upon the State's resting its case, defense counsel moved for a judgment of acquittal arguing that evidence of appellant's intoxication went to the specific intent of burglary of a dwelling. The court denied the motion and refused to reduce the charges to trespass and criminal mischief.
Defense counsel then informed the court that despite her admonitions, appellant insisted on testifying. After the court advised him of his constitutional rights, appellant persisted in his desire to take the stand. In narrative form, appellant verified Fay's earlier determination that Friday was his usual day to get drunk. After leaving work around noon on Friday, he had a beer or two and went to get his belongings from Fay's apartment. He spent the rest of the afternoon with friends and returned to his own apartment where he had another beer and dressed to go out. Around 11:30 p.m., he went looking for Fay at the Elks Club where he drank some more beer. Having been shunned by Fay, appellant returned to his friend's house where he had some more beer. On his way home after midnight, he decided to go by Fay's place to get the rest of his things, and although she was not home, he entered through a window in the back. Appellant lit his lighter so he could see and accidentally set the kitchen curtains on fire as he climbed in the window. He called the operator and a fire truck soon arrived. Appellant's recollection of the Friday escapade was that he had consumed four or five beers that day but was not so drunk that he did not know what he was doing. He declared that he had not drunk the Mad Dog 20/20 found under the seat of his car. He claimed the whole incident was an accident and that everyone else was lying. The defense rested.
In closing argument, defense counsel tried to present appellant's voluntary intoxication defense to the jury; however, the judge sustained the State's objection because appellant said he was not intoxicated and that he knew what he was doing when he broke into his girlfriend's house. Defense counsel argued further that without the defense of voluntary intoxication, she had nothing to argue. She concluded her statement by asking the jury to consider whether the State had proved that appellant had the required intent to commit the crime of burglary.
*933 The trial judge refused to instruct the jury on the defense's requested instruction on voluntary intoxication as a defense to the burglary charge. The jury returned a verdict of guilty on both counts and the trial judge sentenced appellant to concurrent terms of fifteen years for burglary and twenty years for arson.
We conclude that the trial court erred by not giving appellant's requested instruction. It is fundamental that a defendant is entitled to have the jury instructed on the rules of law applicable to his theory of defense if there is any evidence to support such instructions. Hooper v. State, 476 So.2d 1253 (Fla. 1985). It is the jury's duty to weigh the evidence in support of an intoxication defense even if the evidence is conflicting. Pope v. State, 458 So.2d 327 (Fla. 1st DCA 1984). If the defendant denies being intoxicated, he is still entitled to the instruction where he does not deny drinking and others testify that he was intoxicated. Edwards v. State, 428 So.2d 357 (Fla. 3d DCA 1983); Mellins v. State, 395 So.2d 1207 (Fla. 4th DCA 1981).
Florida courts have allowed the voluntary intoxication defense in cases involving the specific intent crime of burglary. See Heathcote v. State, 430 So.2d 945 (Fla. 2d DCA), aff'd, 442 So.2d 955 (Fla. 1983). Accepting the premise that voluntary intoxication is an affirmative defense, it follows that "the defendant must come forward with evidence of intoxication at the time of the offense sufficient to establish that he was unable to form the intent necessary to commit the crime charged." Linehan v. State, 476 So.2d 1262, 1264 (Fla. 1985). In short, the instruction is not required if evidence shows use of intoxicants but does not show intoxication to the extent that the defendant was unable to form the intent necessary to commit the crime charged. We find from a review of the record that there is sufficient evidence to support a jury instruction of voluntary intoxication. The record shows appellant to have not only declared Friday as his day to get drunk but also that he proceeded to consume a great deal of beer during the afternoon and evening hours prior to the burglary act. Further, there were witnesses, who despite appellant's own testimony that he was not intoxicated and the others were liars, observed appellant's bizarre actions, conduct, and extent of imbibing such that the issue of whether appellant was so intoxicated as not to have been able to form the intent necessary to commit the crime charged should have been submitted to the jury for its factual determination. Compare Watkins v. State, 519 So.2d 760, 13 FLW 403 (Fla. 1st DCA Feb. 10, 1988).
We vacate the conviction and sentence for burglary on the trial procedure error only and remand to the trial court for a new trial in accordance herewith.
ZEHMER, J., concurs.
BOOTH, J., dissents with written opinion.
BOOTH, Judge, dissenting.
Defendant entered Allen's apartment twice for the purpose of setting it afire. He returned to enter the apartment the second time in order to reset the fire after the first blaze had been put out by neighbors. After resetting the fire, defendant tried to intervene and prevent anyone from putting it out the second time. Defendant's repeated actions in breaking and entering for felonious purposes were consistent with the specific intent of mind necessary for burglary and were inconsistent with unintentional or accidental actions or with his being too intoxicated to form the necessary intent. Whatever intoxicants defendant had consumed[1] did not deprive him of the necessary state of mind, or prevent him from carrying out his earlier threat to burn Allen's place. These facts lead inescapably to the conclusion that the attempt to establish the defense of voluntary intoxication was futile and that the failure to *934 give the requested charge, if error, was harmless.
NOTES
[1] At trial, defendant testified he was not intoxicated and that anyone who said he was was lying.